(43 South. 455.)

No. 16,546.

STATE ex rel. STEWART, Dist. Atty, v. REID.

In re STEWART.

(April 1, 1907.)

1. CONTEMPT—WHO LIABLE FOR.

There is no law or rule of public policy that exempts a district attorney or acting district attorney from the penalty of contempt of court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 86.]

2. SAME—EVIDENCE—JUSTIFICATION.

Evidence is not admissible, in a proceeding for contempt, for the purpose of proving that the language used was justified by the facts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 81.]

3. SAME—PROCEDURE.

It is only where the offense is committed in the presence of the court in actual session, and within its view and hearing, that proceedings by rule can be lawfully dispensed with. State ex rel. De Buys v. Judges, etc., 32 La. Ann. 1256. The sending of a motion containing alleged defamatory matter to the judge in chambers does not constitute a contempt in faciem curiæ, punishable in a summary manner.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, §§ 140–142.]

(Syllabus by the Court.)

Application by the state, on the relation of Morris R. Stewart, acting district attorney, for writ of certiorari and prohibition to J. B. Lee, judge. Sentence for contempt vacated, and relator released from custody.

E. Howard McCaleb, for relator. Respondent judge, pro se. Clegg & Quintero, Cline & Cline, and Charles Arthur McCoy (Miller, Dufour & Dufour, of counsel), for respondent.

LAND, J. The petition, after reciting that the relator was in the custody of the coroner and acting sheriff of the parish of Calcasieu, and was illegally and wrongfully deprived of his liberty, proceeds, in part, as follows:

"That your relator was duly appointed to act as district attorney in said cause, and before entering upon the discharge of his duties qualified by taking the oath required by law. That he had endeavored to faithfully, honestly, and impartially discharge his duties as such.

"That on the 18th day of February, 1907, in compliance with an order previously rendered by Hon. J. B. Lee, acting judge in said cause, the said cause was called for a hearing before a jury, which had been requested by the defendant in his answer.

"That the coroner had selected as his deputy one of the deputy sheriffs of said defendant, David J. Reid, sheriff of said parish.

"That your relator objected to said deputy sheriff being sworn in to take charge of the jury in said cause, but his objections were overruled by the Honorable J. B. Lee, judge ad hoc in said cause, who swore in said deputy sheriff.

"That the trial of the cause proceeded before the jury, and, after hearing the evidence, argument of counsel, and charge of the judge, the case was submitted to the jury, who retired in the custody of said deputy sheriff, and, after being detained for some hours, the said jury failed to agree, and a mistrial was entered in said cause.

"That thereupon your relator filed his application to have said cause refixed for trial, alleging therein that at the last trial the jury was practically turned over to the defendant and the defendant and his deputy took charge of said jury, to which proceeding relator had objected and reserved a bill, suggesting to the court to use the coroner of said parish, who was present and willing to act. That the said trial was merely a farce and a sham, and in reality no trial at all. [Here follows allegations that a portion of the record was stolen after the mistrial, and that the district clerk immediately took steps to obtain copies from the clerk of the Supreme Court.]

"That the said cause was again fixed for trial for Monday, March 11, 1907, by the Honorable

J. B. Lee, acting judge, and the coroner being present and having again appointed a deputy tax collector of the said David J. Reid, defendant, in his employ, and receiving a salary from him of $90 per month.

"That your relator again objected to said defendant being sworn in to take charge of the jury and to act in said cause, and relator's counsel called the attention of the judge to the provisions of the Constitution and laws of this state in cases where the sheriff was interested in the cause, but, nevertheless, again said judge swore in said deputy of the defendant, who, in conjunction with the coroner, acted as sheriff, and had charge of the jury during the trial.

"That the judge then verbally notified your relator that he would take action against him after the trial was concluded.

"That after hearing the evidence the case was submitted to the jury on the charge of the judge. They retired in the custody of said coroner, and the deputy tax collector of the said defendant, and, after remaining out some 28 hours, again failed to agree, and were discharged by said judge, and a mistrial again entered in said cause.

"That in the meantime your relator, after having notified the judge he would apply to this court to compel him to immediately try said cause 'by using the coroner of the parish of Calcasieu, and free from the defendant, David J. Reid, or his deputies, clerks, or employés,' etc.

"That this notice, copy of which is hereto annexed, was served upon the Honorable J. B. Lee, judge ad hoc in said cause.

"That thereupon the relator repaired to the city of New Orleans, and, while there, the coroner, acting sheriff of said parish, arrived in the city of New Orleans, armed with a writ of arrest, arrested your relator, took him into custody, and on the evening of March 11, 1907, removed him to Lake Charles, in the parish of Calcasieu, where he now is, still in the custody of said coroner, acting as sheriff, illegally and wrongfully deprived of his liberty, and prevented from discharging his duties as acting district attorney in said cause.

"That after his departure he left his law partner, J. W. Baker, Esq., at Lake Charles, present and representing him as counsel in said cause, a fact which was made known to said judge, Hon. J. B. Lee.

"That said judge has ordered the coroner to produce the body of your relator before said court on Saturday, March 16, 1907, at 9 o'clock a. m., to answer to said pretended contempt, and has announced his intention of sentencing your relator to be confined in the parish prison or jail, which is under the control of the defendant, David J. Reid, sheriff of said parish."

The petition further recites that after the removal of relator to Lake Charles the respondent judge sentenced relator to pay a fine of $50 and to be imprisoned in the parish jail for 12 hours for contempt of court.

The relator charges that the acts of the respondent judge in the premises were wrongful, illegal, and oppressive for the following reasons:

That the judge of a district court cannot punish a district attorney or acting district attorney for contempt while acting in his official capacity, and discharging the functions and duties of his office.

That the objectional matter, made the basis of the proceedings for contempt, was justified by the facts of the case, and did not constitute any contempt in fact or in law.

That the said pretended contempt was not committed in the presence of the court, but the said application was filed after the court had adjourned, and the respondent judge was at the time absent from the parish.

That no rule or other proceeding was taken against relator ordering him to show cause why he should not be punished, but the acts and doings of the respondent judge were oral, except the order of arrest, and relator has been deprived of his liberty without any charge being made against him, and without any opportunity to answer the same or establish his innocence.

In the application filed on February 23, 1907, and addressed to the respondent judge, the following averments appear:

"That the trial of this said cause was fixed for the 18th day of February, 1907, and was taken up for trial on that date, and that the jury was impaneled and the evidence taken, and that the case was submitted to the jury and the jury was then turned over to the defendant, D. J. Reid, or his chief deputy, C. B. Perkins, and over the objection of relator, and, of course, this resulted in a mistrial, being a mere sham, and not in reality a trial of said cause. That the coroner of this parish was ready and willing to wait on the court and to take charge of the jury, but was refused by the court, and the defendant, D. J. Reid, or his sheriff's office or the said chief deputy, C. B. Perkins, was placed in charge, contrary to law and public policy."

The application closes with the following prayer:

"Wherefore relator respectfully prays that your honor come to the parish of Calcasieu, and here try and determine this said cause."

It is not disputed that this application was filed in the clerk's office while the respondent judge was absent from the parish. The relator alleges that the coroner selected as his deputy one of the deputies of the defendant. The minutes show that C. B. Perkins, the person thus selected, was the regular court deputy, and for this reason the respondent judge overruled the objection of the relator that the coroner was the proper person to act.

No rule for contempt was taken against the relator, and the only record of the proceedings prior to March 16, 1907, is the warrant for the arrest of the relator of March 13, 1907, addressed to the acting sheriff of the parish of Calcasieu, and reading, in part, as follows:

"Whereas, it has been satisfactorily shown to the said district court now in session in and for the parish of Calcasieu that in a cause pending therein, wherein state ex rel. M. R. Stewart, acting district attorney, is plaintiff, and David J. Reid is defendant, a certain Morris R. Stewart has been guilty of contempt of said court, you are therefore hereby commanded to attach him the said Morris R. Stewart so that you have him before our said court on Saturday, March 16, 1907, at 9 o'clock a. m., to answer to said contempt as was before required of him."

The relator, having been brought before the court, excepted to the proceedings for the reasons set forth in his petition herein, and, in the alternative for answer, denied that the filing of said application and the allegations therein contained constituted any contempt of the authority and dignity of the court, or of the presiding judge thereof; and further pleaded:

"That said averments were made by this appearer acting officially as district attorney in the cause, and the statement of facts therein contained was merely to describe the conditions existing in the previous trial of this cause, without asserting that the presiding judge of this court had intentionally done any wrongful act herein, and this appearer denies that his language can be construed or tortured into any such charge."

The subsequent proceedings are shown by the following extracts from the minutes:

"Exception and answer of M. R. Stewart filed, and taken up and heard.

"By Relator: Before the exception and answer was passed upon by the court, appearer asked the court to hear his evidence and hear authorities, which appearer [the relator] has to produce and to hear his argument in his own behalf, which is denied by the court, and is excepted to by the defendant. (Exception and answer overruled by the court. Defendant excepts to the ruling.)

"By the Court: The law provides that all documents filed before the court and becoming a part of the record thereof shall be in the English language, and couched in decorous language. The court does not consider the document so filed in conformity with law. The court gave the relator ample opportunity to explain himself, which he has failed to do until this time, having been notified by the court that his case would not be delayed for the taking up of this motion until the cause was finally disposed of, having notified him to be present at the termination of the trial which has just been had. This order being given to him in open court, he having disobeyed the same and left the parish without any explanation to the court, and the document filed this morning can have no bearing, or in any way cure the document previously filed by the acting district attorney. The court holding that M. R. Stewart, acting district attorney, being guilty of contempt, he was sentenced to confinement in the parish jail for a period of 12 hours and also fined in the sum of $50 and costs."

The answer of the respondent judge represents that the allegations of the petition of relator are untrue in many important and material respects. Omitting matters of record already stated, the respondent shows that C. B. Perkins was the regular court deputy and was recommended by the recused judge of the district court as an officer worthy of confidence; that the said Perkins, acting under the instructions of the recused judge, did open the jury box containing the names of the jurors drawn for the week, and drew therefrom the names of all the jurors on the list; that after the regular panel was exhausted the coroner was ordered by respondent to summon in person 40 tales jurors, which order was obeyed; that

the case went to trial before a jury selected by counsel, and the acting district attorney did not exhaust his peremptory challenges; that the case was regularly tried, the jury charged according to law, and retired to consider their verdict; that the jury was held approximately 48 hours, and that no intimation or complaint was made to respondent of any misconduct on the part of the jury or of the officers in charge that respondent had the jury brought thrice into court for the purpose of inquiring as to the prospects of a verdict, and asked them if they wanted any further instruction from the court, and sought to impress them with the importance of finding a verdict in the case; that respondent, feeling that it would be vain and useless to continue the sequestration of the jury, finally discharged them from further consideration of the case; that the relator absented himself, and was not present when the jury was discharged, as he should have been; that respondent refixed the case for trial for March 11, 1907, and ordered counsel to be notified; that subsequently the relator, on February 23, 1907, filed in the clerk's office, and caused to be served on respondent and published in the newspapers of the parish of Calcasieu, the petition or motion already mentioned; that on March 11, 1907, respondent in open court caused the relator to stand up and to be informed that respondent would pass upon the impertinent matters contained in said motion at the end of the trial then in progress, so that relator would not be prevented from performing his official duties; that the relator absented himself from the court when the second jury was discharged, in disregard of his duty and of the order of the court; that thereupon respondent caused the attachment to issue as already stated, and relator was brought before the court on March 16, 1907; that relator thereupon filed an answer in which he admitted filing said motion; that the serv-

118 LA.—27

ice of said motion gave to respondent personal knowledge of the contempt committed by relator; that the language used in said motion was contemptuous in its natural import, needed no construction, and places relator in contempt of court, etc. The answer further shows that there was no objection made to the appointment of the deputy sheriff on the second trial as shown by the affidavits attached and the minutes of the court. Respondent further avers that he has been willing and has proceeded according to law to try and dispose of the cause in question, and that he has tried said cause three times, and that, if a verdict has not yet been reached, it is the fault of the juries selected, and not of the court.

Since the submission of the cause an affidavit has been filed traversing some of the statements set forth in the answer of the respondent judge, but our conclusions render it unnecessary for us to consider any disputed question of fact.

1. We know of no law or rule of public policy which exempts a law officer from the penalty of contempt of court.

2. Where the matter is abusive or insulting, evidence that the language used was justified by the facts is not admissible as a defense. Respect for the judicial office should always be observed and enforced.

3. Our conclusions render it unnecessary for us to decide whether on the facts of the case the relator was guilty of contempt of court.

4. The relator should have been proceeded against by rule and given every opportunity for explanation and defense, and was entitled to a patient hearing.

The question of the proper procedure in cases of contempt was ably and exhaustively discussed in State ex rel. De Buys v. Judges, etc., 32 La. Ann. 1256, and Bermudez, C. J., summed up the law as follows:

"Where the offense is committed in presence of the court, while the court is in session, within

its view or hearing, it would seem that contradictory proceeding is not necessary; but the rule is different when the offense is committed otherwise."

The court in that case held that the fact that the offense charged took place in the personal presence and hearing of the judge did not make it a contempt "in faciem curiæ," and said:

"The only reason for the dispensation of contradictory proceedings in the latter case lies, as already indicated, in the necessity of immediate action in vindication of the police and good order of the court, and that reason did not apply."

See Fellman v. Mercantile Fire & Marine Ins. Co. 116 La. 733, 41 South. 53; In re Cooke, 116 La. 734, 41 South. 53.

For the reasons assigned, it is ordered that the proceedings and sentence heretofore had and pronounced against the relator for contempt be vacated and set aside, and that the relator be released from custody and set at liberty, and it is further ordered that the respondent pay all costs of this proceeding.